Filed 9/27/23 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| GINA M. GRAY et al., | H049324, H049433 |
| | (Santa Clara County |
| Plaintiffs and Appellants, | Super. Ct. No. 1-14-CV263333) |
| | |
| v. | ORDER MODIFYING OPINION |
| | AND DENYING REHEARING |
| LA SALLE BANK, N.A. et al., | [NO CHANGE IN JUDGMENT] |
| | |
| Defendants and Respondents. | |


THE COURT:

The court orders that the opinion filed August 30, 2023, be modified as follows:

Page 6, second full paragraph, following first sentence, strike "Further," and add:

Appellants also contend that Cal. Reconveyance was never properly appointed as successor trustee—and therefore never had the authority to sell the Property under a power of sale—because the successor beneficiary signing the trustee substitution was not part of the chain of title. This contention is, in turn, based upon Appellants' claim that the Assignment in 2008 was void because it identified the entity for which La Salle Bank NA acted as Trustee as "WAMU 2006-AR19 Trust," which entity, Appellants claim, did not exist.[5] Appellants alleged further that

---

[5] In the substitution of trustee recorded August 10, 2012, naming Cal. Reconveyance as substituted trustee, the successor beneficiary is identified as "U.S. Bank National Association, as Trustee, as successor in interest to Bank of America, National Association, as Trustee as successor by merger to La Salle Bank NA as trustee for *WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust* by JPMorgan Chase Bank, National Association, as attorney-in-fact." (Italics added.)

Page 37, at end of first partial paragraph, add:

Appellants, however, emphasized that under the terms of the Pooling Agreement, the entity repeatedly identified bore the name "WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust," and not "WAMU 2006-AR19," as found in provisions (1) identifying the name of the mortgage pool; (2) requiring that the trustee conduct business using that name; and (3) requiring the trustee to transfer assets of the trust to that named entity.

Page 37, first full paragraph, second sentence, after "representative" add:
, Dorothy A. Washington,

Page 38, end of first paragraph, insert new footnote 22:

Appellants filed written objections below to the declaration of Chase representative Washington, including objections to her statement that the reference in the Assignment to "WAMU 2006-AR19" as the entity for which La Salle Bank NA was trustee was merely a "truncated version" of the name of the WaMu Trust.  The trial court did not rule on these (or any other) evidentiary objections.  We therefore presume that the trial court overruled the objections and considered the disputed evidence in making its ruling on the summary judgment motion.  (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.)  Under these circumstances, "the overruled objections may be raised on appeal, but the burden is on the objecting party to renew any relevant objection by arguing the issue in its brief; citation to the record alone is insufficient.  [Citations.]" (*Ghazarian v. Magellan Health, Inc.* (2020) 53 Cal.App.5th 171, 183.)  The party making the evidentiary objection at the trial level forfeits it by not renewing it on appeal.  (*Ibid.*) Appellants did not assert or argue their evidentiary objections in their appellate briefs, and, accordingly, they forfeited them.  In their petition for rehearing, Appellants raise (without argument) the objections they asserted below to the Washington declaration.

2

This belated assertion of evidentiary objections asserted below is improper. We will not address them. (See *Alameda County Management Employees Assn. v. Superior Court* (2011) 195 Cal. App. 4th 325, 338, fn. 10 [arguments raised for first time in petition for rehearing will not be considered].)

Page 46, at end of footnote 26 (now footnote 28), add:

In their petition for rehearing, Appellants make a one-sentence argument that this court should consider their claim for negligence "under the Homeowner's Bill of Rights" (Civ. Code, § 2924 et seq.). Appellants' second amended complaint included the allegation that defendants owed a duty of care, "which standard of due care is set forth, in part, in California Civil Code §§2924, et seq." Their opposition to the summary judgment motion below, however, contained no discussion of a statutory duty of care. On appeal, Appellants did not argue this point at all in their briefs. Nor did they present this position at oral argument. Any negligence claim by Appellants based on Civil Code section 2924 et seq. is doubly forfeited—at both the trial level and on appeal. (See *Moore v. Centrelake Medical Group, Inc.* (2022) 83 Cal.App.5th 515, 541, fn. 13 [claim not raised at trial level or in opening brief held " 'doubly forfeited' "].) Further, it is improper for Appellants to raise this new theory in a petition for rehearing. (See *Alameda County Management Employees Assn. v. Superior Court*, *supra*, 195 Cal. App. 4th at p. 338, fn. 10.)

Page 48, first partial paragraph, at end of first partial sentence, add new footnote 31:

In their petition for rehearing, Appellants take issue with our considering arguments presented below that were not addressed or decided by the trial court. In our de novo review of the judgments based upon the summary judgment order, "[w]e may affirm the summary judgment on any correct legal theory, as long as the parties had an

3

adequate opportunity to address the theory in the trial court. [Citation.]" (*Drake v. Pinkham*, *supra*, 217 Cal.App.4th at p. 406; see also *California State Electronics Assn. v. Zeos Internat. Ltd.* (1996) 41 Cal.App.4th 1270, 1275 ["a summary judgment, like any other, will be affirmed if legally correct, without regard for the particular reasons invoked by the trial court"].) The parties here clearly had the opportunity to address, and did address below, the legal theories we consider here, including arguments pertaining to Appellants' void assignment theory. Further, the parties were able to address—and did address in their appellate briefs and in oral argument—issues pertaining to Appellants' void assignment theory and their negligence claim. (Cf. *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147, fn. 7 [no supplemental briefing required under § 437c, subd. (m)(2) because "the issue was raised below and has already been briefed on appeal"].)

Appellants' petition for rehearing is denied.

There is no change in the judgment.

BAMATTRE-MANOUKIAN, ACTING P.J.

_____

DANNER, J.

_____

WILSON, J.

_____

*Gray et al. v. La Salle Bank, N.A. et al.*
**H049324, H049433**

Filed 8/30/23 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GINA M. GRAY et al., | H049324, H049433 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 1-14-CV263333) |
| v. | |
| LA SALLE BANK, N.A., et al., | |
| Defendants and Respondents. | |

## I.     INTRODUCTION

Under the doctrine of res judicata (also known as claim preclusion), a party is prevented from relitigating a claim against the same party (or one in privity with such party) when there has been "a final judgment on the merits in the first suit.  [Citations.]" (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).)  Under California law, a plaintiff's voluntary dismissal without prejudice of a prior action is not a final judgment on the merits that bars a subsequent suit.  (*Tokerud v. Capitolbank Sacramento* (1995) 38 Cal.App.4th 775, 778 (*Tokerud*).)  And California does not prohibit a plaintiff from filing dismissals without prejudice in successive actions.  But under federal rules, when a plaintiff files and dismisses without prejudice a state or federal action and thereafter files a second action in federal court and dismisses it without prejudice, the second dismissal is *deemed to be* "an adjudication on the merits."  (Fed. Rules Civ. Proc., rule 41(a)(1)(B), 28 U.S.C. (hereafter, Rule 41).)  This is sometimes referred to as "the 'two-dismissal rule.' "  (*Commercial Space Management Co. v. Boeing Co.* (9th Cir. 1999) 193 F.3d 1074, 1075.)

This case presents the following question: In California, the filing of successive lawsuits which are both dismissed without prejudice by the plaintiff does not constitute a final judgment on the merits that would preclude a subsequent lawsuit in a California state court. But when, as here, the plaintiff has previously filed two federal suits, alleging federal and state claims, and has voluntarily dismissed them without prejudice, is a third suit filed in California state court alleging only state-law claims subject to claim preclusion because Rule 41(a)(1)(B) provides that a second voluntary dismissal of a federal suit is "an adjudication on the merits?"

In 2005, Gina M. Gray and David A. Zamora (collectively, Appellants) purchased a San Jose residence located on Cannes Place (the Property). They obtained a $1 million loan approximately one year later from Washington Mutual Bank, FA (WaMu), memorialized by a note secured by a deed of trust encumbering the Property. In July 2013, the Property was sold through a nonjudicial foreclosure sale (or trustee's sale) to Ling Jin and Yu Pan (collectively, Buyers).

Appellants, after two prior federal suits were dismissed without prejudice, filed the present lawsuit in April 2014 for wrongful foreclosure and related state-law claims. They named as defendants the Buyers, and financial entities (collectively, Lenders) alleged to have been original or successor beneficiaries or trustees under the note and deed of trust.[1] Generally, Appellants contend that the 2013 foreclosure sale was void because some or all of Lenders who directed, initiated, and concluded that sale were without legal authority to do so. The foundation of this "void foreclosure sale" theory is a challenge

___

[1] The financial entity defendants collectively referred to as Lenders (sued in the initial complaint or named as defendants in subsequent pleadings) were (1) WaMu; LaSalle Bank NA (LaSalle) as trustee for WAMU 2006-AR19 Trust; (2) JP Morgan Chase Bank, N. A. (Chase Bank); (3) Chase Home Finance LLC (Chase Finance); (4) California Reconveyance Company (Cal. Reconveyance); (5) U.S. National Bank Association, as Trustee (U.S. Bank); and (6) Quality Loan Service Corp. (Quality). The record does not disclose that Quality appeared in the case, and it was not identified as a defendant in whose favor judgment was entered.

to an assignment of the deed of trust on April 17, 2008 (the Assignment) by WaMu to "La Salle Bank NA as Trustee for WAMU 2006-AR19." Appellants contend that this Assignment *was void* because the entity identified in the instrument, "WAMU 2006-AR19," was allegedly nonexistent. Lenders dispute these contentions. They respond that the Assignment was valid, and that the trust entity to which the deed of trust was assigned was an existing entity, WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust (hereafter, WaMu Mortgage Trust).

In January 2015, the trial court sustained a demurrer without leave to amend to Appellants' second amended complaint. Appellants filed an appeal from the judgment of dismissal on the order sustaining demurrer. In May 2018, a panel of this court reversed and reinstated five of the eight causes of action. (See *Gray v. La Salle Bank, N.A.* (May 31, 2018, H042337) [nonpub. opn.] (*Gray*).)[2]

On remand, Lenders filed a motion for summary judgment or, in the alternative, for summary adjudication of claims under Code of Civil Procedure section 437c.[3] Lenders presented myriad arguments in support of their motion. One argument was: The entire action was barred by res judicata (claim preclusion), based upon Appellants' initiation and dismissal without prejudice of two prior federal lawsuits. Lenders argued that under Rule 41(a)(1)(B), the dismissal of the second federal suit was "an adjudication on the merits" that barred the present lawsuit. The trial court granted summary judgment on this basis alone.

Separate judgments in favor of Buyers and Lenders were entered by the court. Appellants filed separate notices of appeal from the two judgments.

---

[2] We take judicial notice of this previously filed opinion. (See *ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.* (2016) 5 Cal.App.5th 69, 73, fn. 3 [appellate court may take judicial notice of its prior unpublished decision].)

[3] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

We conclude that the voluntary dismissal of the second federal lawsuit by Appellants was not a final "adjudication on the merits" that barred the filing of this case in state court. The two-dismissal rule of Rule 41(a)(1)(B) applies when there is a voluntary dismissal in state or federal court, a second voluntary dismissal in federal court, and the subsequent filing of an action in the *same federal court* where the second suit was dismissed. We hold that this rule is inapplicable here to the filing of Appellants' *state court lawsuit* alleging state-law claims only that succeeded the filing of voluntary dismissals without prejudice in two federal lawsuits. Appellants are not precluded from asserting the claims in the present action because, under California law, (1) a dismissal without prejudice is not a judgment on the merits that precludes a subsequent action, and (2) there is no proscription against the filing of multiple actions that are voluntarily dismissed by the plaintiff. In reaching this conclusion, we rely on the analysis of the United States Supreme Court in *Semtek Int'l Inc. v. Lockheed Martin Corp.* (2001) 531 U.S. 497 (*Semtek*), which addressed claim preclusion involving the same language ("adjudication on the merits") in the context of involuntary dismissals under Rule 41(b).

Our de novo review of this matter does not end, however, with our conclusion that the trial court improperly found that Rule 41(a)(1)(B) had claim-preclusive effect upon this lawsuit. Lenders made a number of arguments in support of summary judgment that were not considered by the court below. One argument was that the claim for wrongful foreclosure was without merit because it was based on Appellants' central position that the Assignment was void, and this position failed as a matter of law. Lenders argued that the fact that the trust entity was identified as "WAMU 2006-AR19," instead of "WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust," rendered the Assignment, at most, voidable, and that Appellants lacked standing to assert such challenge. We hold, relying substantially on *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919 (*Yvanova*), that the Assignment was not void, and that Appellants may not contest any irregularity in the Assignment as the basis for their wrongful foreclosure claim.

4

We conclude further that Appellants' negligence claim is not maintainable because of the absence of a duty of due care owed by a lender to its borrower.  (See *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905 (*Sheen*).)  And we find that Appellants' three claims that derive from the wrongful foreclosure claim (violation of the Unfair Competition Law, quiet title, and cancellation of instruments) also lack merit.

Accordingly, we conclude that summary judgment was properly granted, and we will affirm the judgments.

## II.    PROCEDURAL BACKGROUND

### A.    Second Amended Complaint

On April 4, 2014, Appellants filed their initial complaint.[4]  Appellants filed their second amended complaint (Complaint) on October 14, 2014.  They asserted eight causes of action.  Five of the claims—wrongful foreclosure, negligence, violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.; unfair competition), quiet title, and cancellation of instruments—remain after the disposition of *Gray*.

Appellants alleged in the Complaint:

Appellants acquired the Property by grant deed that was recorded September 9, 2005.  The Property was Gray's personal residence and, for a portion of the time, Zamora's personal residence.  On October 27, 2006, Appellants executed an adjustable rate promissory note (Note) in the principal amount of $1 million in favor of WaMu, as lender.  The Note was secured by a deed of trust (Deed of Trust) encumbering the Property; Appellants were the trustors, WaMu was the beneficiary, and Cal. Reconveyance was the trustee.

In the Assignment, recorded on April 17, 2008, "[WaMu] purported to assign its rights under the Deed of Trust to La Salle Bank NA as Trustee for WAMU 2006-AR19."

---

[4] Appellants filed a first amended complaint, and the court sustained a demurrer to that complaint with leave to amend.

5

At the time the Assignment was executed, WaMu "did not legally exist," and "WAMU 2006-AR19 Trust" did not exist (and never existed); the Assignment was therefore void.

On August 10, 2012, Cal. Reconveyance, as trustee, on behalf of Chase Bank, recorded a notice of default and election to sell (2012 Default Notice) under the Deed of Trust. On November 13, 2012, Cal. Reconveyance, "acting as purported trustee under the Deed of Trust," recorded a notice of trustee's sale (2012 Trustee's Sale Notice). On March 25, 2013, Cal. Reconveyance, "acting as purported trustee under the Deed of Trust," recorded a notice of trustee's sale (2013 Trustee's Sale Notice). On July 24, 2013, Cal. Reconveyance, "acting as purported trustee under the Deed of Trust," sold the Property at the trustee's sale to Buyers, and thereafter on July 31, 2013 recorded a trustee's deed upon sale (Trustee's Deed).

Appellants alleged that the actions of Cal. Reconveyance, as purported trustee, were unauthorized, because, inter alia, the purported assignee under the Assignment, "WAMU 2006-AR19, was a nonexistent entity," and "[WaMu] did not transfer or assign the Note or Deed of Trust to La Salle, Chase Bank, or Chase Finance." Further, Buyers were "professional bidders at trustee's sales of residential property in the greater San Francisco Bay Area," and knew about "(1) the defective title issues . . . and (2) the void foreclosure sale."

Appellants alleged in their claim for wrongful foreclosure (third cause of action) against Lenders that the Assignment was void, and therefore the 2008 Default Notice, 2008 Trustee Substitution, 2012 Default Notice, 2013 Trustee's Sale Notice, and Trustee's Deed were likewise void. Appellants also alleged claims against Lenders for negligence and for unfair competition. Further, Appellants alleged claims against Lenders and Buyers to quiet title , and for cancellation of instruments.

6

## B. Demurrer and Prior Appellate Proceedings

Lenders filed a demurrer to each of the eight causes of action of the (Second Amended) Complaint;[5] Buyers filed a separate demurrer to two causes of action. In January 2015, the court sustained the demurrers without leave to amend. Appellants filed an appeal from the separate judgments entered in favor of Lenders and Buyers.

A panel of this court concluded on May 31, 2018, in *Gray*, *supra*, H042337, that the trial court had properly sustained without leave to amend Lenders' demurrer to Appellants' claims for fraud, negligent misrepresentation, and violation of the Rosenthal Fair Debt Collection Act (Civ. Code, § 1788 et seq.). But this court concluded that the trial court had erred in sustaining (a) Lenders' demurrer to the claims for wrongful foreclosure, negligence, and unfair competition, and (b) Lenders' and Buyers' respective demurrers to the quiet title and cancellation of instruments causes of action. Accordingly, the judgments were reversed, and the case was remanded for further proceedings as to the five remaining causes of action.

## C. Summary Judgment Motion

In December 2020, Lenders filed a motion for summary judgment, or in the alternative for summary adjudication of claims. Lenders argued that under Rule 41(a)(1)(B), Appellants' filing and voluntary dismissal of two federal court actions was an adjudication on the merits that had claim-preclusive effect upon the instant state court action. Appellants opposed the motion.

On May 19, 2021, the court filed its order granting Lenders' motion for summary judgment. The trial court concluded that the two-dismissal rule applied to bar the present action. The court reasoned: "Plaintiffs previously dismissed the First Federal Action, which essentially asserted the same claims challenging the foreclosure sale of the

---

[5] U.S. Bank was not a party to the demurrer or subsequent appellate proceedings, since it was not formally identified until Appellants filed a Doe amendment in September 2020.

Property as void due to the purportedly void 2008 assignment. Because of this, their dismissal of the Second Federal Action containing the same claims operates, per Rule 41, as an adjudication on the merits of those claims. The next question is whether this adjudication in federal court has preclusive effect in this state court action. The answer is yes."

On June 17, 2021, the court entered judgment in favor of Buyers that was based upon the court's entry of the prior summary judgment order. On August 25, 2021, the court entered judgment in favor of Lenders based upon the summary judgment order. Appellants filed separate notices of appeal from the two judgments.

## III.   DISCUSSION

### A.   Summary Judgment and Standard of Review

A motion for summary judgment may be brought when a party contends "that the action has no merit or that there is no defense to the action or proceeding." (§ 437c, subd. (a)(1).) The court must grant the motion "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.* subd. (c).) "The pleadings play a key role in a summary judgment motion. ' "The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues . . ." ' and to frame 'the outer measure of materiality in a summary judgment proceeding.' [Citation.]" (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.)

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) The summary judgment statute, Code of Civil Procedure section 437c, thus "provides a particularly suitable means to test the sufficiency of the plaintiff's prima facie case and/or of the defendant's [defense]."

8

(*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203, fn. omitted.)

The moving party "from commencement to conclusion, . . . bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 850, fn. omitted.) "A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Ibid.*, quoting § 437c, subd. (o)(2).) A "defendant need . . . [only] show that the plaintiff cannot establish at least one element of the cause of action." (*Aguilar*, *supra*, at p. 853.) The defendant negates the element of the cause of action by establishing that the plaintiff neither has, nor reasonably can obtain, the evidence required to support it. (*Id.* at p. 854.)

Further, the moving party, at the outset, "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) A defendant meets that burden of production in one of three ways. A defendant may present affirmative evidence that negates an essential element of the plaintiff's claim. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) Second, a defendant may submit evidence "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" supporting an essential element of its claim. (*Aguilar*, *supra*, at p. 855.) Third, a defendant may show "that there is a complete defense to the cause of action." (§ 437c, subd. (p)(2).) The defendant accomplishes this task by establishing each element of that defense through the submission of admissible evidence. (*Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289; see also *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1325 [summary judgment is appropriate device to establish defense to action based upon res judicata].) If the defendant meets that burden of production by making a prima facie showing of the absence of a triable issue of material fact, " 'the burden shifts to the plaintiff . . . to show

9

that a triable issue of one or more material facts exists as to that cause of action . . . [and] set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citation.]" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 780 (*Saelzler*), quoting § 437c, subd. (o)(2).)

In addressing a summary judgment motion, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation]." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) The court "strictly scrutinize[s]" the declarations submitted by the moving party and "liberally constru[es]" those offered by the opposing party, and it "resolv[es] any evidentiary doubts or ambiguities in [the opposing party's] favor." (*Saelzler*, *supra*, 25 Cal.4th at p. 768.) The opposing party may rely upon inferences, but "those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork. [Citation.]" (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161.) And inferences properly derived from the parties' evidence are viewed "in the light most favorable to the opposing party." (*Aguilar*, *supra*, at p. 843.)

Since summary judgment motions involve pure questions of law, we review independently the granting of summary judgment to ascertain whether there is a triable issue of material fact justifying the reinstatement of the action. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) In doing so, we "consider[ ] all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) In our de novo review, " ' "[w]e make 'an independent assessment of the correctness of the trial court's ruling . . .' " ' . . . [and w]e may affirm the summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court. [Citation.]" (*Drake v. Pinkham* (2013) 217 Cal.App.4th 400, 406.)

10

The first issue we will address is whether the doctrine of claim preclusion (res judicata) applies to bar Appellants' present action. This is a question we review de novo. (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228.)

### B. Summary Judgment Based on Claim Preclusion Was Improper

The fundamental issue before us is whether, as the trial court concluded, Appellants' dismissal without prejudice of the second federal suit constituted "an adjudication on the merits" under Rule 41(a)(1)(B) that barred the present state court action under principles of res judicata. As we will discuss, were this an instance in which Appellants' third suit had been filed in federal court (United States District Court, Northern District of California), there is no question that the two-dismissal rule under Rule 41(a)(1)(B) would have barred that action. The conclusion is much less clear, however, where, as here, the third suit is filed in state court in which (1) only state-law claims are alleged, and (2) there is no state law paralleling Rule 41(a)(1)(B)'s prohibition of multiple dismissals without prejudice.

We will first enunciate general principles of California law concerning claim preclusion (res judicata). Second, we will identify Appellants' two prior lawsuits, the procedural background of which is essential in addressing claim preclusion. Third, we will recite the relevant language of Rule 41 and discuss case law concerning the two-dismissal rule of Rule 41(a)(1)(B). Fourth, we will review in some detail *Semtek*, *supra*, 531 U.S. 497, a case pivotal to our conclusions in this case. Fifth, we will consider whether the two-dismissal rule under Rule 41(a)(1)(B) necessarily precludes Appellants from bringing the present action alleging state-law claims. Lastly, concluding that the two-dismissal rule is not necessarily claim-preclusive, we consider whether, based upon the law determined applicable in these circumstances, this action is barred by claim preclusion.

11

## 1. *Claim Preclusion Generally*

As the California Supreme Court has explained, the term " 'res judicata' [has frequently been used] as an umbrella term encompassing both claim preclusion and issue preclusion, which [the Supreme Court has] described as two separate 'aspects' of an overarching doctrine. [Citations.] Claim preclusion, the ' " 'primary aspect' " ' of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citations.] Issue preclusion, the ' " 'secondary aspect' " ' historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit. [Citation.]" (*DKN Holdings*, *supra*, 61 Cal.4th at pp. 823-824.)[6] Claim preclusion—the aspect of res judicata we are concerned with here—" 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*Id.* at p. 824.)[7]

Res judicata "is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy." (*Bernhard v. Bank of America Nat'l Trust & Sav. Asso.* (1942) 19 Cal.2d 807, 811 (*Bernhard*); see also § 1908.) As otherwise stated, the underlying policy of claim preclusion (as well as issue preclusion) is "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate[, thereby] protect[ing]

---

[6] Because courts have alternatively referred to issue preclusion as "collateral estoppel" and "res judicata," the Supreme Court, has elected to use the terms "claim preclusion" and "issue preclusion." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824.)

[7] In contrast to claim preclusion, "*issue preclusion* does not bar entire causes of action. Instead, it prevents relitigation of previously decided issues. Second, unlike claim preclusion, issue preclusion can be raised by one who was not a party or privy in the first suit. [Citation.]" (*DKN Holdings*, *supra*, 61 Cal.4th at pp. 824-825, italics added.)

their adversaries from the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions." (*Montana v. United States* (1979) 440 U.S. 147, 153-154, fn. omitted; see also Rest.2d Judgments, § Scope, Relation Between Law of Res Judicata and Law of Procedure ["law of res judicata expresses the terms for assessing whether the procedural system afforded the contending party an adequate opportunity to litigate. . . [, namely,] whether that opportunity was 'full and fair' "].)

As noted, there are three requirements for the application of claim preclusion (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824), two of which (same cause of action and same parties) are satisfied here. The third requirement—whether the present suit is brought "after a final judgment on the merits in the first suit" (*ibid.*)—is at issue in this case. As explained by the Supreme Court, "[a] judgment is on the merits for purposes of res judicata 'if the substance of the claim is tried and determined . . . .' [Citation.]" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 77 (*Johnson*).)

It is established in California that a voluntary dismissal *without* prejudice is not a judgment on the merits, and, as such, has no claim-preclusive effect upon a later suit. (See *Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784 (*Wells*); *Tokerud*, *supra*, 38 Cal.App.4th at p. 778; *Shuffer v. Board of Trustees* (1977) 67 Cal.App.3d 208, 216 (*Shuffer*).) This follows the Restatement, which explains that a judgment in favor of the defendant will not bar a later action by the plaintiff on the same claim, when the prior judgment is based upon the plaintiff's agreement or election to "a nonsuit (or voluntary dismissal) without prejudice . . ." (Rest.2d, Judgments, § 20(1)(b).) In contrast, claim preclusion *does apply* to bar a later action after the voluntary dismissal of a prior suit *with* prejudice. (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 793.) And a judgment based upon an involuntary dismissal will constitute a bar to the later suit if it is

13

shown that " 'the judgment was given upon a consideration of the merits of the controversy.' " (*Campanella v. Campanella* (1928) 204 Cal. 515, 521.)[8]

### 2.      *Appellants' Prior Lawsuits*

On August 8, 2013, Appellants filed the first suit in the United States District Court, Northern District of California, case No. 5-13-cv-03692-LHK (first federal suit).[9] The complaint alleged federal and state-law claims, and it named as defendants, among others, LaSalle, Chase Bank, Cal. Refinance, Quality, and Buyers.  Two months later, Appellants filed a voluntary notice of dismissal without prejudice of the first federal suit.

On September 5, 2013, Appellants filed a complaint in Santa Clara County Superior Court, case No. 113CV252549 (first state suit).  The complaint alleged federal and state-law claims and named as defendants, among others, LaSalle, Chase Bank, Cal. Refinance, Quality, and Buyers.  On October 7, 2013, the defendants removed the case to federal court, United States District Court, Northern District of California, case No. 5-13-cv-04630-LHK (second federal suit).  Defendants' removal was based upon the federal court's having original jurisdiction over the action because the plaintiffs alleged "violations of 12 U.S.C. §2605, 15 U.S.C. §1601 *et seq.*, U.S. Constitution Amendments 5 and 14 and 42 U.S.C. §1983."  One month later, on November 7, 2013, Appellants filed a notice of dismissal without prejudice of the second federal suit.  On

---

[8] Thus, a judgment of dismissal is not deemed on the merits and has no claim-preclusive effect when the involuntary dismissal is, for example, based upon (1) a finding of laches (*Johnson*, *supra*, 24 Cal.4th at p. 77); (2) application of the statute of limitations (*Mid-Century Ins. Co v. Superior Court* (2006) 138 Cal.App.4th 769 (*Mid-Century*)); (3) absence of jurisdiction (*Nichols v. Canoga Industries* (1978) 83 Cal.App.3d 956, 967); (4) lack of prosecution (*Mattern v. Carberry* (1960) 186 Cal.App.2d 570, 572); or (5) mootness and/or lack of ripeness of the issues (*Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1220).

[9] The plaintiffs named in the complaint in the first federal suit, first state suit, and second federal suit, were Gray, Zamora, and Prince Song Cambilargiu; the latter individual is not a plaintiff in the present suit.  For simplicity, we will indicate that the plaintiffs in those proceedings were Appellants.

December 17, 2013, the district court judge entered an "order re: stipulations of dismissal" in the second federal suit. (Capitalization omitted.)  The order recited that the plaintiffs had "stipulated to dismissing this action in its entirety," and that "[t]his action is therefore DISMISSED."  The order did not refer to Rule 41(a), and it did not indicate, in words or substance, that the dismissal was an adjudication on the merits.

On April 4, 2014, Appellants filed their initial complaint in the present state court action.  The (Second Amended) Complaint contained eight state-law causes of action.  As discussed, *ante*, five of those claims survived demurrer.  Appellants did not allege any federal claims in the present case.

### 3.    *Rule 41*

Rule 41(a), captioned "Voluntary Dismissal," reads in relevant part as follows: "(1) *By the Plaintiff*  [¶] (A) *Without a Court Order*.  Subject to Rules 23(e), 23.1(c), 23.2, and 66 [related to class actions, shareholder derivative claims, and actions brought by or against members of an unincorporated association as a class, respectively] and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:  [¶] (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or [¶] (ii) a stipulation of dismissal signed by all parties who have appeared.  [¶] (B) *Effect*.  Unless the notice or stipulation states otherwise, the dismissal is without prejudice.  *But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.*"  (Nonheading italics added.)

As explained by the Seventh Circuit Court of Appeals, "[t]he purpose of the 'two dismissal' rule [under Rule 41(a)(1)(B)] . . . 'is to prevent unreasonable abuse and harassment,' [citation], 'by plaintiff securing numerous dismissals without prejudice.' [Citation.]"  (*Sutton Place Dev. Co. v. Abacus Mortg. Inv. Co.* (7th Cir. 1987) 826 F.2d 637, 640 (*Sutton Place*); see also *Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384, 397 ["Rule 41(a)(1) limits a litigant's power to dismiss actions, but allows one dismissal

15

without prejudice"].)  Some federal courts, including the Second Circuit Court of Appeals, have held that Rule 41(a)(1)(B) should not be given broad construction in the preclusion of federal lawsuits.  "Where the purpose behind the 'two[-]dismissal' exception would not appear to be served by its literal application, and *where that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful not to construe or apply the exception too broadly.  . . .* 'The basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion.' [Citation.]"  (*Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery* (2d Cir. 1976) 534 F.2d 1012, 1017, italics added; see also *ASX Inv. Corp. v. Newton* (11th Cir. 1999) 183 F.3d 1265, 1267 [the court "take[s] care not to construe the [two-dismissal] rule too broadly"].)

Rule 41(a)(1)(B) "*applies in federal court actions* whether the first dismissal was in a state or a federal court."  (9 Wright & Miller, Federal Practice and Procedure (4th. ed.) Voluntary Dismissal—Effect of Second Dismissal on Same Claim, § 2368 (Wright & Miller), fns. omitted, italics added.)  The two-dismissal rule does not apply to bar a federal suit following the voluntary dismissal of two state court actions.  (*Stewart v. Stearman* (D. Utah 1990) 743 F.Supp. 793, 794 (*Stewart*).)  Further, when the *second* voluntary dismissal involves a state court proceeding, Rule 41(a)(1)(B) does not bar a subsequent federal suit, unless the state where the prior proceeding was filed has a two-dismissal statute that parallels the federal rule.  (*Manning v. South Carolina Dep't. of Highway & Public Transp.* (4th Cir. 1990) 914 F.2d 44, 47, fn. 5; see also *Gabhart v. Craven Regional Medical Ctr.* (4th Cir. 1995) 73 F.3d 357 (*Gabhart*) [applying North Carolina two-dismissal statute].)

Rule 41(b) concerns involuntary dismissals and reads:  "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a

dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." As explained by the United States Supreme Court, the second sentence of Rule 41(b) specifies "a default rule for determining the import of a dismissal (a dismissal is '[on] the merits,' with the three stated exceptions [dismissal for lack of jurisdiction, improper venue, or failure to join a party under Rule 19], unless the court 'otherwise specifies')." (*Semtek*, *supra*, 531 U.S. at p. 503.)

### 4. *Semtek Int'l Inc. v. Lockheed Martin Corp.*

*Semtek*, *supra*, 531 U.S. 497 involved a diversity case (removed from state court) in which the federal court (Central District of California), applying California law, dismissed the suit on statute of limitations grounds. (*Id.* at p. 499.) The plaintiff thereafter filed suit in Maryland state court, where the claim was not time-barred. (*Ibid.*) The Maryland court, applying Rule 41(b)'s language that such a dismissal was " 'an adjudication [on] the merits,' " held that the claim was barred by claim preclusion. (*Semtek*, *supra*, at p. 505.) The Supreme Court rejected that conclusion and reversed the state appellate court's decision upholding the trial court's judgment of dismissal. (*Id.* at p. 509.)

The defendant argued that the basis for dismissing the federal case (statute of limitations) was not among Rule 41(b)'s three exceptions (jurisdiction, venue, or joinder) to an unspecified judgment being an adjudication "on 'the merits.' " (*Semtek*, *supra*, 531 U.S. at p. 501.) The dismissal was therefore, the defendant argued, " 'entitled to claim[-]preclusive effect.' " (*Ibid.*) The Supreme Court rejected the argument, reasoning that its "unstated minor premise that all judgments denominated 'on the merits' are entitled to claim-preclusive effect. . . is not necessarily valid." (*Ibid.*) The court found that "it is no longer true that a judgment 'on the merits' is necessarily a judgment entitled to claim-preclusive effect." (*Id.* at p. 503.) The high court concluded there were several reasons

17

that the adjudication "on 'the merits' " language in Rule 41(b) did not necessarily compel a finding of claim preclusion.  (*Semtek*, *supra*, at p. 503.)

First, the Supreme Court noted that "Rule 41(b) sets forth nothing more than a default rule for determining the import of a dismissal (a dismissal is '[on] the merits,' with the three stated exceptions, unless the court 'otherwise specifies').  This would be a highly peculiar context in which to announce a federally prescribed rule on the complex question of claim preclusion, saying in effect, 'All federal dismissals (with three specified exceptions) preclude suit elsewhere, unless the court otherwise specifies.' " (*Semtek*, *supra*, 531 U.S. at p. 503.)[10]

Second, the high court reasoned that "it would be peculiar to find a rule governing the effect that must be accorded federal judgments by other courts ensconced in rules governing the internal procedures of the rendering court itself.  Indeed, such a rule would arguably violate the jurisdictional limitation of the Rules Enabling Act:  that the Rules 'shall not abridge, enlarge or modify any substantive right,' [citations.  [Citation.]  In the present case, for example, if California law left petitioner free to sue on this claim in Maryland even after the California statute of limitations had expired, the federal court's extinguishment of that right (through Rule 41(b)'s mandated claim-preclusive effect of its judgment) would seem to violate this limitation." (*Semtek*, *supra*, 531 U.S. at pp. 503-504.)

Third, the Supreme Court stated that a contrary interpretation of Rule 41(b) would result in a potential violation of "the federalism principle of *Erie R. Co. v. Tompkins* [(1938)] 304 U.S. 64, 78-80, by engendering ' "substantial" variations [in outcomes] between state and federal litigation' which would 'likely . . . influence the choice of a

---

[10] There was a 2007 amendment to Rule 41, "intended to be stylistic only," in which the language "adjudication upon the merits" in subdivisions (a) and (b) was changed to "adjudication on the merits."  (See Rule 41, Adv. Com. Notes, 2007 Amendment.)  We will use the post-2007 language throughout this opinion.

18

forum,' [citation]."  (*Semtek*, *supra*, 531 U.S. at p. 504.)  It reasoned that, although a finding in one jurisdiction that an action is time-barred is generally not claim-preclusive to a suit in another jurisdiction with a longer limitations period, acceptance of the defendant's position would mean that "[o]ut-of-state defendants sued on stale claims in California and in other States adhering to this traditional rule would systematically remove state-law suits brought against them to federal court—where, unless otherwise specified, a statute-of-limitations dismissal would bar suit everywhere."  (*Ibid.*, fn. omitted.)

Fourth, if the "on the merits" language of Rule 41(b) were to have claim-preclusive effect, the Supreme Court reasoned that it would have previously so held. "[I]f Rule 41(b) did mean what respondent suggests, we would surely have relied upon it in our cases recognizing the claim-preclusive effect of federal judgments in federal-question cases.  Yet for over half a century since the promulgation of Rule 41(b), we have not once done so.  [Citations.]"  (*Semtek*, *supra*, 531 U.S. at pp. 504-505.)

As discussed, *post*, the Supreme Court construed Rule 41(b) by referring to the same " 'adjudication [on] the merits' " language found in Rule 41(a) involving the impact of a second voluntary dismissal by the plaintiff.  (*Semtek*, *supra*, 531 U.S. at p. 505.)  The high court concluded that "the effect of the 'adjudication [on] the merits' default provision of Rule 41(b) . . . is simply that, unlike a dismissal 'without prejudice,' the dismissal in [*Semtek*] barred refiling of the same claim *in the United States District Court for the Central District of California.  That is undoubtedly a necessary condition, but it is not a sufficient one, for claim-preclusive effect in other courts*."  (*Id.* at p. 506, fn. omitted, italics added.)

### 5. *Second Federal Voluntary Dismissal Was Not Claim-Preclusive*

The question we address is this:  Did Appellants' dismissal without prejudice of the second federal suit in November 2013 have claim-preclusive effect upon their April 2014 filing of the instant state court action?  In addressing this question, we consider two

19

issues: (1) whether the two-dismissal rule under Rule 41(a)(1)(B) necessarily precludes Appellants from bringing the present action alleging state-law claims; and (2) answering the first question in the negative, whether, based upon the law determined applicable to these circumstances, this state court suit is barred by claim preclusion.

### a. Whether This Action Is Necessarily Barred by Rule 41(a)

We begin by noting that Rule 41(a) is a rule of *federal* procedure in which the two-dismissal rule is applied to a third suit filed in *federal* court. (See *Sutton Place*, *supra*, 826 F.2d at p. 640 [in considering the two-dismissal rule of Rule 41(a)(1)(B), "it must be remembered that federal rules are carefully-crafted instruments designed to achieve, by their uniform application, fairness and expedition in the conduct of federal litigation"]; see also 9 Wright & Miller, § 2368, fns. omitted ["two[-]dismissal rule applies in federal court actions whether the first dismissal was in a state or a federal court"].) The fact that Rule 41(a) is centered on federal court proceedings is underscored by the application of the two-dismissal rule. The two-dismissal rule does not apply to a federal suit that is preceded by the voluntary dismissal of two state court actions. (*Stewart*, *supra*, 743 F.Supp. at p. 794.) Moreover, Rule 41(a)(1)(B) does not bar a federal suit when the second voluntary dismissal occurred in state court, unless that state has a two-dismissal statute that parallels the federal rule. (*Gabhart*, *supra*, 73 F.3d 357.)

Thus, Rule 41(a)(1)(B) bars the filing of a third suit *in federal court* after the plaintiff's voluntary dismissal of two prior actions, the second suit having been filed in federal court. (See *Camacho v. Greenpoint Mortg. Funding, Inc.* (*In re Camacho*) (E.D. Cal. 2013) 489 B.R. 837, 843, italics added [under Rule 41(a)(1)(B), a voluntary dismissal that is an " 'adjudication [on] the merits,' is a dismissal that does bar the plaintiff from *returning to the federal court* with the same claim"].) Rule 41(a)(1)(B) says nothing about the application of the two-dismissal rule—i.e., whether the second federal court dismissal has claim-preclusive effect—when the third action is filed in state court.

20

There is no question that had Appellants, after voluntarily dismissing the second federal action, filed the present claim in the United Stated District Court, Northern District of California,[11] that suit would have been barred because that prior "dismissal [would] operate[] as an adjudication on the merits" under Rule 41(a)(1)(B). (See *Engelhardt v. Bell & Howell Co.* (8th Cir. 1962) 299 F.2d 480, 484 [plaintiff's voluntary dismissal of second federal diversity suit following dismissal of prior federal diversity suit was an " 'adjudication [on] the merits' " barring third federal action].) Here, however, Appellants filed a state court action alleging only state-law claims, having abandoned the federal claims they had asserted in the first and second federal suits. As explained below, we conclude that the voluntary dismissal of the second federal suit did not have claim-preclusive effect upon the present state court action.

The United States Supreme Court in *Semtek*—considering whether " 'adjudication [on] the merits' " in Rule 41(b) had claim-preclusive effect upon the petitioner's state-court suit that was preceded by an involuntary dismissal of a federal lawsuit—noted that the meaning of " 'judgment on the merits' " had evolved over time. (*Semtek*, *supra*, 531 U.S. at p. 502.) The high court highlighted that the "Restatement of Judgments ha[d] abandoned the use of the term—'because of its possibly misleading connotations,' [citation]." (*Ibid.*; see Rest.2d Judgments, § 19, com. a.) The *Semtek* court concluded that, present day, "the term 'judgment on the merits' . . . applied to some judgments that do *not* pass upon the substantive merits of a claim and hence do *not* (in many jurisdictions) entail claim-preclusive effect." (*Semtek*, *supra*, at p. 502, original italics.) The Supreme Court thus held that "it is no longer true that a judgment 'on the merits' is necessarily a judgment entitled to claim-preclusive effect." (*Id.* at p. 503; see also *id.* at p. 501.) And, as discussed¸ *ante*, the court identified at least four reasons that the

---

[11] We observe that the filing of a third federal lawsuit is theoretical, since only state-law claims are alleged in the present suit, and the case would not qualify for diversity jurisdiction.

21

"adjudication on the merits" language in Rule 41(b) did not compel a finding of claim preclusion.  (See *Semtek*, *supra*, at pp. 503-505.)

In reaching its conclusion concerning the claim-preclusive effect of involuntary dismissals under Rule 41(b), the Supreme Court in *Semtek* drew upon the same "adjudication [on] the merits" language found in the voluntary dismissal provisions of Rule 41(a).  The high court found that "in discussing the effect of voluntary dismissal by the plaintiff, [Rule 41(a)] makes clear that an 'adjudication [on] the merits' is the opposite of a 'dismissal without prejudice.' " (*Semtek*, *supra*, 531 U.S. at p. 505.)  It held that "[t]he primary meaning of 'dismissal without prejudice' . . . is dismissal without barring the plaintiff from returning later, *to the same court*, with the same underlying claim.  That will also ordinarily (though not always) have the consequence of not barring the claim from *other* courts, *but its primary meaning relates to the dismissing court itself.*" (*Ibid*., italics added.)  The *Semtek* court—returning to the state appellate court's conclusion that the federal court's dismissal of the prior action on statute of limitations grounds had a claim-preclusive effect upon the subsequent action in Maryland— concluded:  "[T]he effect of the 'adjudication [on] the merits' default provision of Rule 41(b) . . . is simply that, unlike a dismissal 'without prejudice,' the dismissal in the present case barred refiling of the same claim *in the United States District Court for the Central District of California.  That is undoubtedly a necessary condition, but it is not a sufficient one, for claim-preclusive effect in other courts*." (*Id.* at p. 506, fn. omitted, italics added.)

Thus, for example, using a slight variation of the facts presented in *Semtek*: (1) the plaintiff brings a diversity action alleging state-law claims in a federal court outside of California; (2) the federal suit is dismissed because it is time-barred under that state's laws; and (3) the plaintiff brings a second action on the same claim in California state court, where there is a longer limitations period.  Under these circumstances, because a dismissal on statute of limitations grounds is "not on the merits" under

22

California law (*Mid-Century*, *supra*, 138 Cal.App.4th at p.777; see *id*. at pp. 776-777), the dismissal of the prior federal suit because it was time-barred had no claim-preclusive effect upon the later California suit. (See *Semtek*, *supra*, 531 U.S. at p. 506; see also *Styskal v. Weld County Bd. of County Comm'rs* (10th Cir. 2004) 365 F.3d 855, 859 [applying *Semtek*, federal court's dismissal "with prejudice" of state-law claims based upon lack of supplemental jurisdiction to consider them did not necessarily act as a bar to the plaintiff's subsequent filing of a state court suit; "with prejudice" denomination of dismissal meant only that the plaintiff could not refile the claims in the same federal court].)

The court in *Hardy v. America's Best Home Loans* (2014) 232 Cal.App.4th 795 (*Hardy*) applied *Semtek* in the context of a federal court's involuntary dismissal of an action for lack of prosecution.[12] In *Hardy,* the plaintiff filed a federal action (United States District Court, Eastern District of California) in which he alleged federal and state-law claims arising out of his refinance of a secured loan. (*Id.* at pp. 798-799.) After a ruling on defense motions to dismiss and strike, the district court dismissed certain claims and ordered the plaintiff to file an amended complaint. (*Id.* at p. 799.) The plaintiff did not do so, and the court, upon defense motions, dismissed the moving defendants with prejudice, after which the plaintiff filed a notice of dismissal. (*Id.* at p. 800.) The district

[12] Appellants' counsel at oral argument cited *Hardy*, *supra*, 232 Cal.App.4th 795, which was not mentioned in Appellants' opening or reply briefs. Since respondents Lenders and Buyers did not have the benefit of addressing its potential relevance, we requested supplemental briefing from the parties concerning the potential applicability of *Hardy* here.

In connection with the supplemental briefing, Appellants filed a request that this court take judicial notice of Buyer Yu Pan's real estate license. (See Evid. Code, §§ 452, 459, subd. (a).) Appellants admit that this document was not before the court below. The request for judicial notice is denied. (See *Jordache v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [court will take judicial notice of only material that "is necessary, helpful, or relevant" ]; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [appellate courts ordinarily do not take judicial notice of records not presented to the lower court].)

court ruled that its prior "dismissal pursuant to rule 41(b) ' "operate[d] as an adjudication on the merits," ' " and concluded that the plaintiff had no right to dismiss without prejudice after the court had already ruled on the matter  (*Ibid.*)  The plaintiff thereafter filed a lawsuit in state court alleging state-law claims only.  (*Ibid.*)  The defendant, shortly before trial, successfully moved for judgment on the pleadings, the trial court concluding that the federal court dismissal was " 'on the merits' in the sense that it could have collateral estoppel effect."  (*Id.* at p. 801.)

The appellate court reversed.  It rejected the defendant's argument that because both the federal court's dismissal order and Rule 41(b) provided that the dismissal constituted an adjudication on the merits and the dismissal was with prejudice, the state court lawsuit was barred by collateral estoppel.  (*Hardy*, *supra*, 232 Cal.App.4th at p. 804.)  In so holding, the *Hardy* court reasoned that "[t]he United States Supreme Court has determined . . . that rule 41(b) is not a claim-preclusion rule; *it applies only to the district court's internal procedures*.  [Citation.]"  (*Ibid.*, citing *Semtek*, *supra*, 531 U.S. at pp. 497, 503, 506, italics added.)  The *Hardy* court concluded that it could not "simply look to rule 41(b) to determine whether dismissal of the federal action was an adjudication on the merits."  (*Hardy*, *supra*, at p. 805.)  It ultimately held (as we will discuss, *post*), that because the federal dismissal, under California law, was not an adjudication on the merits, the state court action was not barred.  (*Id.* at pp. 805-806.)

In the case before us, we apply the reasoning and conclusions of the high court in *Semtek*, *supra*, 531 U.S.497 concerning involuntary dismissals under Rule 41(b) to the present case involving the provisions of Rule 41(a).  Under the latter rule, Appellants' voluntary dismissal of the second federal suit "operate[d] as an adjudication on the merits."  (Rule 41(a)(1)(B).)  The procedural effect of this was that the second federal suit dismissal "barred refiling of the same claim in [the same court,] the United States District Court for the [Northern] District of California."  (Cf. *Semtek*, *supra*, at p. 506 [applying " 'adjudication [on] the merits' " language of Rule 41(b)].)  But the fact that

24

the dismissal of the second federal suit was deemed under Rule 41(a)(1)(B) "an adjudication on the merits" did *not* mean it was entitled to claim-preclusive effect *in other courts*. (Cf. *Semtek*, *supra*, at pp. 501-503.) Rather, in this case, the application of Rule 41(a)(1)(B) to the voluntary dismissal of the second federal suit did not necessarily have claim-preclusive effect upon Appellants' present action in state court in which they alleged only state-law claims.

A recent federal court decision that narrowly applied Rule 41(a) and relied on *Semtek* supports our conclusion here. (See *Project Drilling, LLC v. Ledya Oil & Gas Expl. & Prod., SA* (N.D. Okla., Feb. 11, 2022, No. 21-CV-0427-CVE-CDL) 2022 U.S. Dist. LEXIS 25408 (*Project Drilling*).)[13] There, the plaintiff filed its initial suit in Oklahoma state court. (*Id.* at p. *3.) Three days later, the plaintiff filed a second case in Texas state court, which was removed to the United States District Court, Southern District of Texas. (*Id.* at pp. *3-4.) The plaintiff dismissed the Oklahoma state court case the same month; shortly thereafter, it dismissed the Texas federal court case. (*Id.* at p. *4.) The plaintiff filed a third lawsuit in the United States District Court, Northern District of Oklahoma. (*Ibid.*) The defendant argued that the plaintiff's voluntary dismissal of the two prior cases should be given claim-preclusive effect, thereby barring the third case under the two-dismissal rule of Rule 41(a)(1)(B). (*Project Drilling*, *supra*, at pp. *5, *18.)

The *Project Drilling* court, relying significantly on *Semtek*, rejected the defendant's position. The district court observed that in *Semtek*, the high court had rejected the "argument that all judgments 'on the merits' necessarily had preclusive effect in another court, and [it found that] the term 'judgment on the merits' had come to encompass 'judgments . . . that do *not* pass upon the substantive merits of a claim and hence do *not* (in many jurisdictions) entail claim-preclusive effect.' [Citation.] The

---

[13] California courts may rely on unpublished federal decisions as persuasive authority. (See *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18.)

Supreme Court contrasted the term 'dismissal without prejudice' as used in Rule 41(a), which is understood to mean that the plaintiff can refile the same claims in the same court, and interpreted the term 'adjudication on the merits' *to mean only that the plaintiff would be prohibited from refiling the same claims in the same federal district court*. [Citation.]" (*Project Drilling*, *supra*, 2022 U.S. Dist. LEXIS 25408, at pp. *19-20, italics added.)

The *Project Drilling* court applied these principles to conclude that the two-dismissal rule did not apply to the plaintiff's third action filed in federal court in Oklahoma. It observed that "[c]ourts must be careful not to read the two[-]dismissal rule too broadly, because it is an 'exception to the general principle, contained in Rule 41(a)(1) and honored in equity prior to the adoption of the Federal Rules, that a voluntary dismissal of an action does not bar a new suit upon the same claim.' [Citation.]" (*Project Drilling*, *supra*, 2022 U.S. Dist. LEXIS 25408, at p. *20.) The district court concluded that the second voluntary dismissal of the action removed to federal court in Texas "precludes Project from refiling its claims in that court, but the two[-]dismissal rule does not prevent Project from proceeding with its claims in this [Oklahoma federal court] case. There is no reason to give the term 'adjudication on the merits' different meanings in Rule 41(a) and Rule 41(b), and the Supreme Court in *Semtek* clearly explained that an 'adjudication on the merits' under Rule 41(b) created by a voluntary dismissal does not automatically have a preclusive effect in another federal district court." (*Id.* at pp. *20-21.)

The Tennessee Supreme Court addressed the two-dismissal rule under procedural circumstances similar to those presented here. (See *Cooper v. Glasser* (Tenn. 2013) 419 S.W.3d 924 (*Cooper*).) There, the plaintiff filed and voluntarily dismissed a suit in California state court. (*Id.* at pp. 925-926.) He then brought suit in the United States District Court, Middle District of Tennessee, in which he invoked federal question jurisdiction but also alleged state-law claims. (*Id.* at p. 926.) The plaintiff, while there

26

was a pending motion to dismiss on federal statute of limitations grounds, dismissed the federal lawsuit without prejudice. (*Ibid.*) He then filed suit in Tennessee state court, alleging only state-law claims. (*Ibid.*) The trial court granted the defendants' motion for summary judgment, concluding that the state court suit was barred by claim preclusion under the two-dismissal rule of Rule 41(a)(1)(B). (*Cooper*, *supra*, at p. 926.) The Tennessee Supreme Court, relying on *Semtek*, *supra*, 531 U.S.497, reversed. (See *Cooper*, *supra*, at p. 929 ["we are firmly convinced that *Semtek's* reasoning controls the outcome of this case"].) The *Cooper* court held that the two-dismissal rule did not bar the third suit in Tennessee state court alleging state-law claims, because "it [could not] reasonably be said that the conclusion of Mr. Cooper's case in federal court 'pass[ed] on the substantive merits' of his claims. [Citation.]" (*Id.* at p. 930.) The court held further that whether the prior federal court dismissal had claim-preclusive effect would be determined under Tennessee law, which "permit[ted] a plaintiff to voluntarily dismiss his [or her] case two times 'without prejudice.' " (*Ibid.*)

Lastly, we reject Lenders' position that the reasoning in *Semtek*, *supra*, 531 U.S.497 has no application to this case. We acknowledge that the Supreme Court in *Semtek* considered the language "adjudication on the merits" in determining its application to an involuntary dismissal under Rule 41(b). However, as we have discussed, *ante*, the high court *specifically relied on and construed* that same language under Rule 41(a) in reaching its conclusion that an involuntary dismissal that operates as "an adjudication on the merits" under Rule 41(b) does not necessarily have claim-preclusive effect upon a subsequent action filed in a *different court* than the one in which the dismissal was entered. (See *Semtek*, *supra*, at pp. 505-506.) We perceive of no reason that the high court's conclusion regarding the lack of claim-preclusive effect under Rule 41(b) would not apply equally to a second voluntary dismissal under Rule 41(a). (See *Project Drilling*, *supra*, 2022 U.S. Dist. LEXIS 25408, at pp. *20-21; *Cooper*, *supra*, 419 S.W.3d at pp. 929-930.)

27

### b. Whether This Suit Is Barred Under Applicable Law

We have determined that Rule 41(a)(1)(B)'s language that a second voluntary dismissal without prejudice is deemed "an adjudication on the merits" does not necessarily have preclusive effect upon this subsequent state-court action. It remains for us to decide (a) what law applies to determine claim preclusion, and (b) applying that law, whether this case is barred by claim preclusion because there has been a final judgment on the merits of the claims asserted here.

### (1) Law Determining Issue

We return to the Supreme Court's discussion in *Semtek*, *supra*, 531 U.S. 497. After concluding that the "adjudication [on] the merits" language in Rule 41(b) did not necessarily have claim-preclusive effect upon the second action filed in Maryland state court, the high court "turn[ed] to consideration of what determines the issue." (*Semtek*, *supra*, at p. 506.) The court noted that it was the United States Supreme Court that had "the last word on the claim-preclusive effect of *all* federal judgments." (*Id.* at p. 507, original italics.) The Supreme Court was then required to enunciate "the appropriate federal rule" for determining claim preclusion in a federal diversity case. (*Id.* at p. 508.) It concluded that because "state, rather than federal, substantive law is at issue there is no need for a uniform federal rule. And indeed, nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state or a federal court. This is . . . a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits." (*Ibid.*) Accordingly, the Supreme Court concluded that whether the involuntary dismissal of the action filed in federal court in California was claim preclusive was "governed by a federal rule that in turn incorporates California's law of claim preclusion." (*Id.* at p. 509.)

28

The appellate court in *Hardy*, *supra*, 232 Cal.App.4th 795 applied *Semtek*'s choice-of-law analysis. After concluding that the federal court's involuntary dismissal for failure to prosecute did not necessarily result in claim preclusion under Rule 41(b), the *Hardy* court acknowledged that, under *Semtek*, "federal common law determines the claim-preclusive effect of federal court judgments." (*Hardy*, *supra*, at p. 805.) The appellate court noted further that *Semtek* held that when the dismissal is by a federal court sitting in diversity, "there was no need to establish a uniform federal rule since state, not federal, substantive law was at issue" (*ibid.*), and therefore claim preclusion would be determined based upon " 'the law that [of]. . . state courts in the State in which the federal diversity court sits.' [Citation.]" (*Id.* at p. 806, quoting *Semtek*, *supra*, 531 U.S. at p. 508.) In the case before it, the *Hardy* court found that "while the federal order dismissed both federal and state-law claims, the claims asserted in this [state court] action involve only state claims. In that respect, the district court's dismissal of the state law claims is similar to a federal court's dismissal in a diversity action. Accordingly, under *Semtek*, the preclusive effect of the district court's dismissal is determined under California law." (*Hardy*, *supra*, at p. 806.) The appellate court went on to hold that, because under established California law, a dismissal for failure to prosecute was not a final judgment on the merits invoking claim preclusion (*id.* at p. 803), and because "the district court's penalty dismissal did not clearly decide any issue in the case" (*id.* at p. 807), the federal court dismissal did not bar the plaintiff's subsequent state-law claims alleged in the California state action. (*Id.* at p. 806.)

*Semtek*'s choice-of-law holding controls our decision here. And we are guided by the instructive application of *Semtek* by the Fifth District Court of Appeal in *Hardy*. The complaint in Appellants' second federal suit—originally filed in state court—alleged 13 state-law claims, including each of the five state-law claims alleged in the present action that survived demurrer. Here, as was the case in *Hardy*, although the complaint that was the subject of dismissal included both federal and state-law claims, the

29

subsequent (present) state suit alleges only state-law claims. (Cf. *Hardy*, *supra*, 232 Cal.App.4th at p. 806.) The Supreme Court's holding in *Semtek*, *supra*, 531 U.S. at page 509, instructs us that in this case, whether the voluntary dismissal of the second federal suit in California is claim-preclusive is "governed by a federal rule that in turn incorporates [the] law of claim preclusion" of the state where the second federal suit was brought, namely, California.

In reaching this conclusion, we are mindful of the Supreme Court's caveat that "[t]his federal reference to state law will not obtain . . . in situations in which the state law is incompatible with federal interests. If, for example, state law did not accord claim-preclusive effect to dismissals for willful violation of discovery orders, federal courts' interest in the integrity of their own processes might justify a contrary federal rule." (*Semtek*, *supra*, 531 U.S. at p. 509.) In this case, we perceive of no incompatibility between applying California claim-preclusion law with federal interests.

Lenders argue to the contrary, asserting that application of state law here would promote an unauthorized practice of claim-splitting by permitting Appellants to "remov[e] their federal claims and pursu[e] a third complaint based exclusively on state[-]law claims that seek the same relief" sought in the second federal suit. Lenders cite *City of Los Angeles v Superior Court* (1978) 85 Cal.App.3d 143 (*City of Los Angeles*) in support of their position. There, the plaintiff had filed a federal action alleging violation of his civil rights (42 U.S.C. § 1983) related to his prior arrest and seizure of personal property. (*City of Los Angeles*, *supra*, at p. 148.) A judgment was entered after a jury trial and a defense verdict. (*Ibid.*) The plaintiff then brought suit in state court for conversion related to the prior seizure of property, naming the Los Angeles and Los Angeles County, who had not been sued in the federal case. (*Id.* at pp. 146, 148, 150-151.) Under those circumstances, the appellate court, invoking the prohibition against

30

claim splitting,[14] concluded that the plaintiff's state court action against the governmental entities was barred because the claims arose out of the same nucleus of facts and should have been asserted in the prior federal action. (*Id.* at pp. 150-154.) The procedural circumstances presented here bear no resemblance to those in *City of Los Angeles*, where the plaintiff filed a federal suit, reserving related claims against nonparties, prosecuted the case to judgment, and then effected a "split" of those reserved claims by filing a separate state lawsuit. There is no improper claim splitting practice here that would be promoted by applying state law concerning claim preclusion.

Further, we disagree with Lenders' assertion that the choice-of-law discussion in *Semtek*, *supra*, 531 U.S. 497 has no application to this case. The United States Supreme Court held that the potential claim-preclusive effect of a dismissal order under Rule 41(b) in a federal diversity case upon a later state court action should be determined under the law of the state where the federal court that issued the dismissal order was located. (*Semtek*, *supra*, at p. 508.) Although the claim-preclusive-effect determination here concerns a voluntary dismissal under Rule 41(a), it nonetheless involves the same inquiry as it would for an involuntary dismissal, and there is no reason to deviate from *Semtek*'s holding that the law of the state where the district court that issued the dismissal is located should control. Lenders make the undeveloped argument "that the *Semtek* opinion was limited to cases in diversity jurisdiction." But the fact that Appellants alleged federal claims in addition to state-law claims in the second federal suit complaint—which was the basis for Lenders' removal of the case to federal court—is

---

[14] "California courts have held that where a plaintiff makes no attempt to have a federal court exercise supplemental jurisdiction over a related state law claim, and then later files that state law claim in state court, such claims are barred by res judicata and the related prohibition against claim splitting. [Citations.]" (*Franceschi v. Franchise Tax Bd.* (2016) 1 Cal.App.5th 247, 264.)

of no consequence.  Those federal claims were not alleged in the present suit.[15]  Since only state-law claims are at issue here in determining the potential claim-preclusive effect of the dismissal of the second federal suit, there is no reasoned basis for concluding that *Semtek* does not apply, simply because the second federal suit here was based upon federal question jurisdiction rather than diversity jurisdiction.  (See *Hardy*, *supra*, 232 Cal.App.4th at p. 806 [although federal suit based on federal question jurisdiction included both federal and state claims, only state-law claims were alleged in later state suit, and "the district court's dismissal of the state law claims is similar to a federal court's dismissal in a diversity action"; "under *Semtek*, the preclusive effect of the district court's dismissal is determined under California law"].)[16]

Lenders rely on an unpublished federal decision in support of its position that the choice-of-law discussion in *Semtek*, *supra*, 531 U.S.497 has no application to this case. (See *Watson v. Fannie Mae*, 2020 U.S. Dist. LEXIS 67698, *5 (*Watson*).)  The

---

[15] We express no opinion as to whether claim preclusion may have applied to bar the present action, in whole or in part, had Appellants realleged the federal claims along with the state-law claims.

[16] Lenders argue that because the voluntary dismissal at issue here involved a suit in a federal question case (rather than a federal court sitting in diversity, as in *Hardy*), the court was required to apply federal common law to conclude that the "judgment" dismissing the second federal case was claim preclusive.  Lenders cite *Taylor v. Sturgell* (2008) 553 U.S. 880, 891, holding that "[t]he preclusive effect of a federal-court judgment is determined by federal common law.  See *Semtek*[, *supra*, ]531 U.S. 497, 507-508.)"  We understand Lenders' position to be that because the second federal suit was based on federal question jurisdiction (with ancillary state-law claims), this court is required to give full faith and credit to the federal order dismissing the case on Appellants' stipulation as a judgment that precluded a new state court action alleging only state-law claims.  But there was no judgment by the federal court determining Appellants' voluntary dismissal to have been claim-preclusive.  We would be required to read into the dismissal order such a determination.  While the result might be different if we were considering a federal court judgment determining that a *prior* voluntary dismissal was claim-preclusive of that later action, here, for the reasons we have stated, we are not compelled under federal law to find that Appellants' state-law claims, which have never been adjudicated, are barred.

32

procedural circumstances in that case differ substantially from the present case. In *Watson*, the plaintiffs filed four identical lawsuits; each lawsuit was removed by the defendants to the same federal court (United States District Court, District of Arizona). (*Id.* at pp. *4-5.)[17] The first case was involuntarily dismissed without prejudice by the court because the plaintiffs failed to serve the complaint. (*Id.* at p. *4.) The second case was voluntarily dismissed by the plaintiffs. (*Ibid.*) In the third case, the court ordered a dismissal after the defendants' motion to dismiss was unopposed, and the court deemed it as a consent to dismissal pursuant to local rules. (*Id.* at pp. *4-5.) The defendants brought a motion to dismiss the fourth case, arguing that it was barred by claim preclusion. (*Id.* at p. *3.) The court granted the motion over the plaintiffs' objection. (*Id.* at pp.*4-5.)

Watson involved a dismissal by the *same federal court* that had dismissed involuntarily the prior identical lawsuit. There was no statement by the court in the dismissal of the prior (third) suit that it was *not* an adjudication on the merits. (*Watson*, *supra*, 2020 U.S. Dist. LEXIS 67698, at pp. *5-6.) Since that dismissal was not based upon one of the three exceptions under Rule 41(b) (jurisdiction, venue, or joinder), it was "an adjudication on the merits" and under the federal rule it thus "barred refiling of the same claim in the United States District Court for the [District of Arizona]." (*Semtek*, *supra*, 531 U.S. at p. 506.) Moreover, the district court concluded that a finding of claim preclusion was warranted because of the plaintiffs' failure to prosecute and failure to oppose the motion to dismiss the third case: " 'Without reliance on the text of Rule 41(b),' federal law nevertheless 'clearly dictates' that dismissals based on the kind of failure to prosecute that Plaintiffs have repeatedly exhibited whenever this complaint has been removed to federal court are entitled to claim-preclusive effect. [Citations.]"

---

[17] It is not disclosed in *Watson* whether the plaintiffs' state court complaints were removed to federal court on the grounds of diversity of citizenship or on the basis of the joinder of federal claims with state-law claims. (See 28 U.S.C. § 1441.)

(*Watson*, *supra*, at \*6.) *Watson* has no application to this case, where the issue is whether a second voluntary dismissal without prejudice in federal court that is deemed under Rule 41(a)(1)(B) to be "an adjudication on the merits" is claim preclusive of a subsequent state suit alleging only state-law claims.[18]

### *(2)    No Claim Preclusion*

We have determined that under *Semtek*, *supra*, 531 U.S. at page 508, that "the appropriate federal rule" for determining claim-preclusion here is to apply the law of "state courts in the State (i.e., California) in which the federal" court where the prior dismissal occurred. From our discussion, *ante*, under California law, it is clear that the voluntary dismissal of the second federal suit had no claim-preclusive effect upon the present state court action.

The third element of claim preclusion relevant here—there having been "a final judgment on the merits in the first suit" (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824)— was not met. This was not a case in which " 'the substance of the claim [was] tried and determined . . . .' [Citation.]" (*Johnson*, *supra*, 24 Cal.4th at p. 77.) Here, Appellants filed the first federal suit (which they later dismissed without prejudice). They filed a second lawsuit in state court that was removed to federal court (i.e., the second federal suit). Within months of filing the second case, Appellants filed a notice of dismissal without prejudice of the second federal suit. There was no trial and determination of Appellants' claims. (See *Goddard v. Security Title Ins. & Guarantee Co.* (1939) 14 Cal.2d 47, 54 ["the nature of the action and the character of the judgment [are what] determines whether it is *res judicata*"].) Likewise one of the key policy considerations of claim preclusion under California law would not be served if we were to conclude that

---

[18] Lenders cite other unpublished federal authorities (see *Ferretti v. Beach Club Maui, Inc.*, 2018 U.S. Dist. LEXIS 103950; *Thomas v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 135954) that are also factually and legally distinguishable. They do not support the assertion that the two-dismissal rule of Rule 41(a)(1)(B) is necessarily claim-preclusive of the present action.

Appellants are barred from bringing the present action: This is plainly *not* a case in which a finding of claim preclusion would serve the goal of "preventing a party who has had one fair trial on an issue from again drawing it into controversy." (*Bernhard*, *supra*, 19 Cal.2d at p. 811.)

Further, it is established law in California that a voluntary dismissal without prejudice does *not* have claim preclusive effect. (See *Wells*, *supra*, 29 Cal.3d at p. 784; *Tokerud*, *supra*, 38 Cal.App.4th at p. 778; *Shuffer*, *supra*, 67 Cal.App.3d at p. 216.) The Restatement takes the same approach. (See Rest.2d, Judgments, § 20(1)(b) [defense judgment based on the plaintiff's agreement or election to "a nonsuit (or voluntary dismissal) without prejudice" does not bar later action on same claim].) And unlike rules governing federal proceedings (see Rule 41(a)(1)(B)), and rules of civil procedure of some other states (see, e.g., Haw. R. Civ. P. 41(a)(1); N.C. Rule 41(a); in Ohio R. Civ. P. 41(a)(1); S.C. R. Civ. P. 41(a)(1)), California has no parallel two-dismissal rule prohibiting more than one voluntary dismissal without prejudice. (See Cal. Prac. Guide Civ. Pro. Before Trial Ch. 11-A (The Rutter Group 2023) ¶ 11:35.7: "Theoretically, there is no limit on the number of times plaintiff could dismiss without prejudice and file again on the same claim.")

Therefore, under the federal rule, as enunciated by the Supreme Court, that the claim-preclusive effect of the federal court dismissal is to be determined by reference to state (in this instance, California) law (*Semtek*, *supra*, 531 U.S. at p. 508), Appellants' voluntary dismissal without prejudice of the second federal action did not bar the present suit.

### C. Wrongful Foreclosure: Standing to Challenge Trust Deed Assignment

#### 1. Introduction

As noted, *ante*, the essence of Appellants' wrongful foreclosure claim against Lenders is that the Trustee's Deed of July 2013 was void, as were various succeeding documents related to and preceding the recordation of that Trustee's Deed. This position

is founded on the allegation that the Assignment—the assignment of deed of trust by WaMu to "La Salle Bank NA as Trustee for WAMU 2006-AR19"on April 17, 2008— was void because WaMu was not in existence at the time, and the "WAMU 2006-AR19 Trust" did not exist and never existed.

One of the grounds asserted by Lenders in support of their motion for summary judgment was an attack on Appellants' contention that the Assignment was void and therefore this circumstance invalidated the Trustee's Deed and the foreclosure sale. Lenders argued, inter alia, that the language in the 2008 Assignment, "WAMU 2006-AR19," was simply a "truncated name" of the trust entity, "WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust" (i.e., WaMu Trust), and that any failure to reference that trust by its complete name did not cause the Assignment to be "void," as claimed by Appellants; at most, the Assignment was voidable. In their opposition to the motion, Appellants responded that recorded documents, including the Assignment itself and the pooling agreement under which the WaMu trust entity became the owner of the subject loan, established that "WAMU 2006-AR19 Trust" was a nonexistent entity and therefore the Assignment was void.

The trial court did not address this ground asserted in support of Lenders' motion for summary judgment. Rather, because it concluded that the entire action was barred by claim preclusion, the trial court held that it "need not evaluate the substantive merits of [Lenders'] remaining arguments" in support of their motion. Since our review of the judgment on the summary judgment order is not limited to the issues actually decided by the trial court, and we must " 'affirm the judgment of the trial court if it is correct on any theory of law applicable to the case' " (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1498 (*Schmidt*)), we will address Lenders' no-standing argument here.

### 2. *Motion and Opposition*

Lenders in their motion presented evidence concerning the background of WaMu Trust's role as successor beneficiary of the Deed of Trust. Lenders submitted a Pooling

36

and Service Agreement (Pooling Agreement) dated as of December 2, 2006—a date prior to recordation of the 2008 Assignment. Under the Pooling Agreement, the subject Loan (among many other loans) was conveyed by WaMu Asset Acceptance Corp., as depositor, was deposited to a mortgage pool, and was conveyed to the "Trust," defined as "WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust," with the "Trustee" being La Salle Bank National Association. Appellants, in their opposition to the motion, did not dispute these facts.

The Assignment memorialized the transfer of all beneficial interest in the Deed of Trust from WaMu to the WaMu Trust. Lenders submitted a declaration of a Chase representative that the reference in the Assignment to the italicized portion in the Assignment, "LA SALLE BANK NA AS TRUSTEE FOR *WAMU 2006-AR19*" was simply a "truncated version of the WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust," i.e., the name of the WaMu Trust, and that WaMu Trust and WaMu 2006-AR19 were "one and the same." La Salle Bank NA was at the time the trustee of the WaMu Trust. Appellants disputed these facts; however, they provided no evidence refuting that the reference in the 2008 Assignment to "WAMU 2006-AR19" as the entity for which La Salle Bank NA was trustee was merely a "truncated version" of the name of the WaMu Trust.[19]

---

[19] The evidence cited by Appellants consisted generally of three matters: (a) the Pooling Agreement and exhibits; (b) 10 paragraphs of Gray's declaration; and (c) five exhibits submitted by Appellants (Exhibits A-E). None of the three matters created a material dispute that the reference to "WAMU 2006-AR19" was simply a truncated reference to the WaMu Trust. Appellants asserted that this evidence showed that "WAMU 2006-AR19" was a nonexistent entity, based upon an Internet search for a different name (one in which "19" was omitted), "LaSalle Bank NA as Trustee for *WAMU 2006-AR.*" (Italics added.) Lenders rebutted this with evidence that when counsel for Lenders conducted an Internet search of company filings with the United States Securities and Exchange Commission using "WAMU 2006-AR19" in the search field, "WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust" automatically populated as a search result.

### 3. *Discussion*

In addressing Appellants' wrongful foreclosure claim based upon the assertion that the Assignment was void, we acknowledge that Appellants' assert that there was a material defect with respect to the Assignment because of its reference to the entity as "WAMU 2006-AR19," rather than "WaMu Mortgage Pass-Through Certificates Series 2006-AR19 Trust."[20]  However, " 'the general rule is that misnomer of a corporation will not invalidate a grant or conveyance to or by it, if it appears from the instrument itself, or is shown by such evidence as is admissible upon the question, that it was the corporation intended.' [Citation.]" (*Galindo v. Select Portfolio Servicing, Inc.* (C.D. Cal., Sept. 12, 2016, No. 2:15-cv-03582-CAS(AGRx) 2016 U.S. Dist. LEXIS 125141, at *13, quoting *Sixth Dist. Agriculture Asso. v. Wright* (1908) 154 Cal. 119, 127 (*Wright*).)  Here, Lenders presented undisputed evidence that the rights under the Loan were transferred to the WaMu Trust under the Pooling Agreement as of December 1, 2006.  And it is unrefuted in the record that the reference in the Assignment to "WAMU 2006-AR19" as the entity for which La Salle Bank NA was trustee was merely a "truncated version" of the name of the WaMu Trust.

Assuming that the naming of the trust of which La Salle Bank, NA was trustee in the Assignment was a material defect, the question is whether it rendered the Assignment void, thereby providing standing for Appellants to assert a claim for wrongful foreclosure.  The California Supreme Court's discussion in *Yvanova*, *supra*, 62 Cal.4th

---

[20] Appellants argue in their opening brief that this court "recognized as viable" their void Assignment theory of liability "in the earlier appeal."  However, what this court actually stated was:  "Because 'the facts alleged in the pleading are deemed to be true' [citation], and it is irrelevant whether the plaintiff will be able to prove the allegations of the complaint [citation], we hold only that Appellants have stated a viable wrongful foreclosure claim, and we express no opinion as to whether they will ultimately be able to establish the foreclosure was based upon a void assignment." (*Gray*, *supra*, H042337 at p. 48, fn. 25.)

38

919 of the distinction between instruments that are void, and those that are merely voidable, is central to our analysis.

In *Yvanova*, our high court held that a borrower has standing to sue to challenge an illegal foreclosure due to a void assignment. (*Yvanova*, *supra*, 62 Cal.4th at pp. 929-938.) In so holding, the Court distinguished between an assignment that was void, and one that was merely voidable; a third-party borrower, the Court held, has no standing to challenge an assignment that is merely *voidable*. (*Id.* at pp. 929-930, 939, 942-943.) The *Yvanova* court explained: "A void contract is without legal effect. [Citation.] 'It binds no one and is a mere nullity.' [Citation.] 'Such a contract has no existence whatever. It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it. . . .' [Citation.] As we said of a fraudulent real property transfer . . . , ' "A void thing is as no thing." ' " (*Id.* at p. 929.) The Supreme Court continued: "A voidable transaction, in contrast, 'is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.' [Citations.] It may be declared void but is not void in itself. [Citation.] Despite its defects, a voidable transaction, unlike a void one, is subject to ratification by the parties. [Citations.]" (*Id.* at p. 930; see also Rest.2d Contracts, § 7 [in a contract that is voidable, "one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance"].)

Applying *Yvanova*'s explanation of void and voidable transactions, we conclude that the claimed defect in the Assignment is one that rendered the instrument, at most, voidable. It would certainly not be the expectation of the parties who signed the Pooling Agreement that the Assignment that effectuated the transfer of the Loan, because of a naming error, was a " 'mere nullity' . . . '[having] no existence whatsoever.' " (*Yvanova*, *supra*, 62 Cal.4th at p. 929.) Such naming errors, at most, render the instrument voidable.

(Cf. *Wright*, *supra*, 154 Cal. at p. 127 [where it is shown that corporation by its correct name was intended party, "misnomer of a corporation will not invalidate a grant or conveyance to or by it"].) The claimed defect in the identification of the trust on whose behalf La Salle, as trustee, was receiving an assignment of the Deed of Trust was one that was subject to being corrected by the trustee through, for instance, an action for reformation under Civil Code section 3399. (See, e.g., *Owens v. Palos Verdes Monaco* (1983) 142 Cal.App.3d 855, 863, fn. 5, disapproved of on other grounds by *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 521, fn. 10 [mistake in identification of seller warranted remedy of reformation]; *Domino v. Mobley* (1956) 144 Cal.App.2d 24, 29 [typographical error regarding amount of note in an escrow instruction contract did not invalidate contract when uncertainty could be resolved by extrinsic evidence]; *Starr v. Davis* (1930) 105 Cal.App. 632, 636-637 [seller of business, who had ongoing obligation to advertiser that was to be assumed by buyer, was permitted to reform sales contract under Civ. Code. § 3399 to supply correct name of advertising entity].) In no sense can the manner in which the trust was identified—something explained as a truncated version of the actual name of the trust—be viewed as a defect rendering the Assignment void, i.e., a legal nullity.

*Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23 (*Kalnoki*) supports this conclusion. There, the borrowers challenged a substitution of trustee because it failed to properly state the name of the original beneficiary in the signature block, omitting "Inc." from the beneficiary's name, "Wells Fargo Home Mortgage, Inc." (*Id.* at p. 37.) The original beneficiary, however, was correctly identified in the text of the substitution. (*Ibid.*) The appellate court rejected this challenge, concluding "it appears omitting the word 'Inc.' from the signature block was obviously a mere inadvertence or typographical error that was not material and did not affect the validity of the Substitution. [Citation.]" (*Ibid.*)

40

Similarly, in *Perry v. Select Portfolio Servicing, Inc.* (N.D. Cal., Jan. 8, 2016, No. 15-cv-03629-RS) 2016 U.S. Dist. LEXIS 76156, the borrower challenged a note and deed of trust, claiming the documents were void because of how the lender was identified. The court rejected the challenge, holding that the borrower had "advanced no viable basis for finding the note and deed of trust void simply because the lender was identified by its trade name [America's Wholesale Lender] instead of its formal legal name [Countrywide Home Loans]." (*Id.* at p. *4, fn. omitted; see also (*In re Gold Strike Heights Ass'n) Indian Vill. Estates, LLC v. Cmty. Assessment Recovery Servs.* (9th Cir. 2020) 828 Fed.Appx. 358, 360-362 [rejecting property owner's wrongful foreclosure claim based upon the wrong entity, Gold Strike 1, being identified as beneficiary instead of Gold Strike 2, concluding that there was a misidentification rather than the wrong entity participating in the foreclosure]; *Budd v. Joseph Zukin Blouses, Inc.* (1928) 90 Cal.App. 447, 448-449 [trial court properly rejected challenge to assignment of claim based on incorrect name, " 'S. and B. Knitting Company' " used in instrument where assignor and signatory was " 'S. & B. Knitting Mills, Inc.' "].)

We are also persuaded by a line of cases addressing borrowers' challenges to the validity of assignments of deeds of trust in the context of securitized investment trusts.[21] The typical challenge is one based on the transfer of the subject loan to the securitized investment trust occurring after the closing date specified in the trust's pooling and service agreement. In *Yhudai*, *supra*, 1 Cal.App.5th 1252, the appellate court considered the borrower's contention that the untimely transfer of his loan to a securitized investment trust rendered the assignment—as well as subsequent actions on the loan, including the foreclosure sale—void. (*Id.* at p. 1255.) The appellate court noted that

---

[21] "A securitized investment trust is created by pooling the loans into a trust and selling to investors the right to receive the mortgage interest and principal payments. [Citation.] Terms of the trust and the rights and obligations of the parties are set forth in a pooling and service agreement." (*Yhudai v. IMPAC Funding Corp.* (2016) 1 Cal.App.5th 1252, 1254, fn. 2 (*Yhudai*).)

41

"[a]n assignment that is merely *voidable* . . . does not support a wrongful foreclosure action. . . . 'When an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so.  A borrower who challenges a foreclosure on the ground that an assignment to the foreclosing party bore defects rendering it voidable could thus be said to assert an interest belonging solely to the parties to the assignment rather than to herself.'  [Citations.]" (*Id.* at pp. 1256-1257, original italics, quoting *Yvanova*, *supra*, 62 Cal.4th at p. 936.)  Observing that trust beneficiaries, in general, may approve or ratify "unauthorized acts by trustees" (*Yhudai*, *supra*, at p. 1259), the court in *Yhudai* concluded that the borrower had failed to state a wrongful foreclosure claim because an untimely transfer of a loan to a securitized trust formed under New York law rendered the assignment, at most, voidable (*id.* at pp. 1258-1259).  Other California appellate courts have similarly concluded that borrowers have no standing to challenge untimely loan transfers to securitized trusts, concluding that the transactions are, at most, voidable.  (See, e.g., *Kalnoki*, *supra*, 8 Cal.App.5th at pp. 42-43; *Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 811-817 (*Mendoza*); *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 813, 815, fn. 5.)[22]

---

[22] We note two further examples of instances in which a third party has been held to lack standing to challenge assignment irregularities that rendered the transactions voidable.  Numerous courts have found that a borrower lacks standing to challenge an assignment based upon it having been robo-signed, because the transaction is merely voidable at the option of the party harmed by the conduct.  (See *Pratap v. Wells Fargo Bank, N.A.* (N.D. Cal. 2014) 63 F.Supp.3d 1101, 1109; *Mendaros v. JPMorgan Chase Bank* (N.D. Cal., May 31, 2017, No. 16-cv-06092-HSG) 2017 U.S. Dist. LEXIS 83534, at p. *15; *Mendoza*, *supra*, 6 Cal.App.5th at p. 819.)  And it was held in a case in which an assignment of the right to bring actions against the borrower was signed by lenders at a time when their corporate powers were suspended that the borrower could not challenge the validity of the assignment because the defect rendered it voidable, rather than void. (See *Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 805-806.)

The claimed defect in the Assignment resulted in the instrument being, at most, voidable. "Only the parties to the agreement have the power to ratify or extinguish; consequently, allowing a borrower to challenge an assignment based on a defect that only renders it voidable would allow the borrower to exercise rights belonging exclusively to the parties to the assignment." (*Mendoza*, *supra*, 6 Cal.App.5th at pp. 810-811.) Although Appellants assert repeatedly that the Assignment was void, they offer no apposite legal authority to support their position that an error in the naming of a party to the assignment rendered the instrument void.[23] Because Appellants had no standing to challenge the claimed defect in the 2008 Assignment (see *Yvanova*, *supra*, 62 Cal.4th at pp. 939, 942-943; *Yhudai*, *supra*, 1 Cal.App.5th at pp. 956-957), and this claimed defect is the basis for their claim for wrongful foreclosure, there was no triable issue of material fact supporting this claim.[24]

---

[23] Appellants (without discussion) cite *Diocese of San Joaquin v. Gunner* (2016) 246 Cal.App.4th 254 in support of their position that the 2008 Assignment was void. The case involved circumstances in which a bishop of a local Episcopal diocese (who at the time was inhibited and shortly after deposed from his position) purported to amend articles of incorporation to change the name of the corporation sole, when he had no authority to do so. (*Id.* at pp. 271-273.) Shortly thereafter, the deposed bishop executed a number of grant deeds purporting to transfer church real property to the entity he had previously identified in his invalid amendment to articles of incorporation. (*Id.* at pp. 262, 273.) The appellate court concluded that the conveyances to an entity that did not exist were void and "the[] deeds were a nullity." (*Id.* at p. 273.) *Diocese of San Joaquin* has no application here.

[24] Lenders also argue that Appellants' wrongful foreclosure claim is not maintainable because there was no showing of prejudice, in that Appellants "provided 'no facts indicating that the foreclosure sale, which has already occurred, would have been averted but for the alleged deficiencies in the foreclosure process nor that the original lender would have refrained from foreclosure under the circumstances presented.' [Citations.]" (Quoting *Kalnoki*, *supra*, 8 Cal.App.5th at p. 49.) Since we have concluded that the claim fails because Appellants lack standing, we need not address this issue. (See *Hiser v. Bell Helicopter Textron Inc.* (2003) 111 Cal.App.4th 640, 655 (*Hiser*) [generally, appellate courts "decline to decide questions not necessary to the decision"].)

### D. Negligence Cause of Action

In the fourth cause of action for negligence, Appellants alleged that Lenders owed them a duty of care in the handling of the Loan, "including, but not limited to the initiation and processing of the nonjudicial foreclosure of the Deed of Trust and the obligation to only record accurate and truthful foreclosure documents." They alleged that Lenders breached that duty, inter alia, by recording "an inaccurate and knowingly false Notice of Sale and Trustee's Deed Upon Sale," and by "proceeding with a nonjudicial foreclosure" with the knowledge that WaMu no longer existed and "the purported transferee, WAMU 2006-AR19[,] was a nonexistent entity."

In their opposition to the motion, Appellants contended that triable issues of fact existed as to the negligence claim based upon *both* the void 2008 Assignment theory *and* upon the theory that Lenders breached a loan workout plan. Appellants alleged that under a 2009 Trial Plan Agreement (TPA), they were required to make three consecutive monthly payments of $2,533.71, they made each payment, and Chase Bank breached the TPA by refusing the third payment. Appellants argued that they had presented triable issues of material fact as to whether Lenders owed them a duty of care, whether they breached that duty, and whether Appellants sustained damages as a proximate result of the breach.[25]

---

[25] The TPA, Appellants' performance under it, and Chase's alleged breach were among the general allegations of the Complaint, and those general allegations paragraphs were incorporated by reference into the negligence cause of action. But as pleaded, Appellants did not allege negligence based upon the theory that Lenders did not comply with their obligations under the TPA. Thus, from our review of the record, there is some question whether a theory of negligence based upon Lenders' alleged breach of the TPA was properly before the court in connection with the summary judgment motion. (See *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 332 [defendant's burden in " 'moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*[, and defendant] "need not '. . . refute liability on some theoretical possibility not included in the pleadings' " ' "].)

The negligence claim has no merit for at least two fundamental reasons. First, the claim, as pleaded, is derivative of Appellants' claim based upon the theory that the Assignment was void, and therefore the trustee's sale of the property was likewise void. As we have concluded, *ante*, the wrongful foreclosure claim has no merit because there was no void assignment; thus Appellants have no standing to challenge a transaction that was, at most, voidable. Appellants' negligence claim fails for the same reason. Regardless of whether it is based upon a theory of wrongful foreclosure or negligence, the claim is not legally viable.

Second, although the issue was unsettled when Lenders' motion was heard and decided, it is now clear that a lender does not owe a general duty of care to its borrower in connection with loan modifications. Lenders asserted below that under *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 68, a borrower "did not have a common law duty of care to offer, consider, or approve a loan modification." While there was some conflict on this point of law in the California appellate courts, the issue was decided by the California Supreme Court in *Sheen*, *supra*, 12 Cal.5th 905. Lenders, in their respondents' brief, cite *Sheen*, contending that it is dispositive. Although Appellants submitted a reply brief, they did not discuss *Sheen*, in particular, or their negligence claim in general.

In *Sheen*, the plaintiff alleged a postforeclosure claim against his lender for negligence, asserting that the lender had a legal duty of care to respond fully to his loan modification applications, and that by breaching that duty, the plaintiff " 'for[went] alternatives to foreclosure' " and was damaged. (*Sheen*, *supra*, 2 Cal.5th at p. 915.) The trial court sustained the lender's demurrer, and the Court of Appeal affirmed. (*Ibid.*) The Supreme Court, after noting that the California appellate courts were divided on the issue of a lender's duty to its borrower in the loan modification context (*id.* at pp. 919-920), and after exhaustive discussion, held "that when a borrower requests a loan modification,

45

a lender owes no tort duty sounding in general negligence principles to 'process, review and respond carefully and completely to' the borrower's application." (*Id.* at p. 948.)

*Sheen*, *supra*, 12 Cal.5th 905 is dispositive.[26] Since Appellants cannot establish a legal duty of care, their claim for negligence is without merit.[27]

### E. Sixth Through Eighth Causes of Action

The second amended complaint included an unfair competition claim against Lenders (sixth cause of action). Appellants also alleged claims against Lenders and Buyers to quiet title (seventh cause of action), and for cancellation of instruments (eighth cause of action).

In their motion and reply papers, Lenders specifically addressed each of the three claims, arguing that each claim lacked merit. Appellants, in their opposition filed below, presented a one-sentence statement concerning the three claims that was entirely conclusory.[28] Appellants present no discussion of the unfair competition, quiet title, or cancellation of instruments claims in either their opening brief or their reply brief filed here. Under these circumstances, we conclude that Appellants have clearly forfeited their right to oppose the motion as to these claims and have abandoned any appeal relating to

---

[26] Although Appellants do not address *Sheen*, the Supreme Court indicated in dicta that even if the lender in the case had accepted the plaintiff's loan modification applications, no tort duty would arise, because "even when parties are actively negotiating a contract, 'there is no liability in tort for economic loss caused by negligence' during such negotiations. [Citations.]" (*Sheen*, *supra*, 12 Cal.5th at p. 924, fn. 4; see also *Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App.4th 1251, 1260 ["[w]hen two parties, under no compulsion to do so, engage in negotiations to form or modify a contract neither party has any obligation to continue negotiating or to negotiate in good faith"].)

[27] Because the absence of legal duty is dispositive, we need not address other arguments presented by Lenders in support of their challenge to the negligence claim. (See *Hiser*, *supra*, 111 Cal.App.4th at p. 655.)

[28] Under the heading referencing the three causes of action, Appellants argued: "Because of the triable issues above and the undisputed nature of plaintiffs' allegations, the remaining causes of action also must proceed and cannot be dismissed on summary judgment or summary adjudication."

them.  (See *Schmidt*, *supra*, 223 Cal.App.4th at p. 1513 [" 'failure to address summary adjudication of a claim on appeal constitutes abandonment of that claim' "]; *Arnall v. Superior Court* (2010) 190 Cal.App.4th 360, 373 [failure to oppose summary adjudication on a particular ground before the trial court forfeits the right to assert challenge on appeal].)

The three claims were, in any event, derivative of, and dependent upon, the viability of Appellants' principal claim for wrongful foreclosure, which has no merit. Each claim appears to be founded upon the theory that because the Assignment was void, Lenders' actions resulting in the foreclosure of the Property were unlawful and the foreclosure sale was void.  (See *Krantz v. Bt Visual Images* (2001) 89 Cal.App.4th 164, 178 [where causes of action are incidental to and depend upon the validity of the preceding claims for relief, fate of preceding claims applies to incidental causes of action].)  We thus conclude that, although Appellants have forfeited any argument on appeal, the sixth through eighth causes of action in any event lack merit.

### F.    Conclusion

Guided by the United States Supreme Court's decision in *Semtek*, *supra*, 531 U.S. 497, we conclude that the voluntary dismissal filed in the second federal suit did not bar Appellants' present lawsuit under the doctrine of claim preclusion.  The two-dismissal rule under Rule 41(a)(1)(B), which applies to proceedings in federal courts, did not necessarily have claim-preclusive effect upon Appellants' present suit in which they alleged only state-law claims.  The claim-preclusion inquiry here is governed by a federal rule that, in turn, incorporates the law of this state.  Accordingly, under California law, a plaintiff may file and dismiss without prejudice more than one action successively and not be precluded from bringing another suit,.  The voluntary dismissal of the second federal suit did not bar the present action.

Notwithstanding the fact that the trial court's conclusion that the action was without merit was founded on claim preclusion, in our de novo review, we have

47

considered additional arguments raised by Lenders in their motion that were not decided below.  In doing so, we have considered the merits of Appellants' wrongful foreclosure claim which is based upon the theory that the 2008 Assignment of the Deed of Trust was void, and that the foreclosure that followed in 2013 was also void.  We conclude, following the analysis of our high court in *Yvanova*, *supra*, 62 Cal.4th 919, that any defect in the Assignment was at most voidable, and thus Appellants have no standing to prosecute a wrongful foreclosure claim.  We have considered further Appellants' claim for negligence.  We find it to be without merit because Lenders owed no duty of due care to Appellants, as borrowers, to support a tort claim.  (See *Sheen*, *supra*, 12 Cal.5th 905.)  Lastly, we find no merit to Appellants' unfair competition, quiet title, and cancellation of instruments causes of action which derive from Appellants' void Assignment theory.

Therefore, since Lenders established in their motion that all five claims alleged in the second amended complaint that survived demurrer are without merit, we conclude that the motion for summary judgment was properly granted.

## IV.    DISPOSITION

The separate judgments entered in favor of Buyers and Lenders on June 17, 2021, and August 25, 2021, respectively, are affirmed.  Respondents Lenders and Buyers shall recover their costs on appeal.

48

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
DANNER, J.

_____
WILSON, J.

*Gray et al. v. La Salle Bank, N.A. et al.*
**H049324, H049433**

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No.:  1-14-CV263333 |
| | |
| Trial Judge: | Hon. Christopher G.Rudy |
| | |
| Attorneys for Plaintiffs and Appellants: | Edward C. McDonald Jr. |
| Gina M. Gray | Jensen & McDonald |
| David A. Zamora | |
| | |
| Attorneys for Defendants and Respondents: | Bryant Steven Delgadillo |
| | Parker, Ibrahim & Berg LLP |
| La Salle Bank, N.A. | |
| Chase Home Finance, LLC | Matthew Henderson |
| California Reconveyance Company | Parker Ibrahim & Berg LLP |
| JPMorgan Chase Bank, National Association | |
| | |
| Attorney for Defendants and Respondents: | In Pro Per |
| Yu Pan | |
| Ling Jin | |

***Gray et al. v. La Salle Bank, N.A. et al.***
**H049324, H049433**